2009 ND 192

James ZIEGLER, d/b/a Lake Region
Livestock, Plaintiff and
Appellee

v.

MEADOWBROOK INSURANCE
GROUP, INC.

and

Star Insurance Company, Defendants
and Appellants.

No. 20090141.

Supreme Court of North Dakota.

Nov. 17, 2009.

Daniel Mack Traynor, Devils Lake, N.D., for plaintiff and appellee.

Gary R. Wolberg, Bismarck, N.D., for defendants and appellants.

CROTHERS, Justice.

[¶ 1] Meadowbrook Insurance Group, Inc. and Star Insurance Company appealed from an order for partial summary judgment: (1) denying Meadowbrook's motion to dismiss an action for a declaratory judgment by James Ziegler, doing business as Lake Region Livestock; (2) determining Star had a duty to defend and indemnify Ziegler in an underlying lawsuit under an insurance policy issued by Star; and (3) granting Ziegler's request for further discovery to determine whether Meadowbrook was a real party in interest. We hold the order is not appealable, and we dismiss the appeal.

I

[¶ 2] Star issued Ziegler a Stockyard Services insurance policy providing Ziegler with coverage for the "sale and/or purchase by [Ziegler] of livestock consigned for sale and sold by him upon which there was a valid mortgage or lien, where the payment of the net proceeds of such sale was diverted to use other than the application as payment of such valid mortgage or lien." Dakota West Credit Union sued Ziegler, alleging that Ziegler was a middleman in a "sham" cattle sale transaction involving Todd Horob and Horob's businesses, H & J Livestock, LLC, and Horob Livestock, Inc. Dakota West claimed Ziegler's participation in the sham transaction as a middleman between Horob Livestock and H & J Livestock resulted in Dakota West's inability to recover on a $950,000 loan to H & J Livestock for the purchase of the cattle. Dakota West alleged Ziegler's conduct constituted negligence, fraud, constructive fraud, deceit and civil conspiracy.

[¶ 3] Ziegler asked Star and Meadowbrook to defend and indemnify him in Dakota West's lawsuit. After his request was denied, Ziegler brought this declaratory judgment action against Star and Meadowbrook, alleging they had a duty to defend and indemnify him in Dakota West's action. Ziegler also alleged Star and Meadowbrook had a duty to defend and indemnify Ziegler for claims by a Montana Bankruptcy Trustee in Horob's bankruptcy proceeding. Ziegler further alleged Star and Meadowbrook breached an implied covenant of good faith and fair dealing and their conduct constituted an anticipatory breach or repudiation of the insurance contract.

[¶ 4] Star and Meadowbrook answered, claiming no duty existed to defend or indemnify Ziegler under the Stockyard Services insurance policy because coverage under the policy was not triggered by a sale or consignment. Star and Meadowbrook also claimed that Star had denied Ziegler's request for coverage and that Meadowbrook was not a real party in interest. According to a Star senior claims representative, Star is a wholly-owned subsidiary of Meadowbrook, Meadowbrook does business only through its wholly-owned subsidiaries, Meadowbrook does not itself insure any person or companies, and Star issued the Stockyards Services policy to Ziegler.

[¶ 5] Star and Meadowbrook sought summary judgment dismissal of the declaratory judgment action, claiming no coverage existed under the policy because there was not a bona fide consignment sale of livestock. Ziegler sought partial summary judgment, claiming Star and Meadowbrook had a duty to defend and indemnify Ziegler under the Stockyard Services policy. Ziegler's attorney submitted an affidavit stating that "[i]n order to bring the coverage issue to the Court before any trial in the underlying claim against Ziegler brought by Dakota West Credit Union, the parties have informally agreed to delay discovery on the issues of bad faith

and other claims made in the above matter." Ziegler's attorney further stated he had "not examined the relationship between the insurer, Star, and the company that handled the claim, Meadowbrook," and he asked the court to withhold any decision on the bad-faith claim and to deny the motion to dismiss Meadowbrook pending further discovery.

[¶ 6] The district court granted partial summary judgment for Ziegler, concluding Star had a duty to defend and indemnify Ziegler in Dakota West's underlying action. The court denied the motion to dismiss Meadowbrook, concluding further discovery was necessary to determine whether Meadowbrook was a real party in interest. The court did not resolve Ziegler's other claims against Star and Meadowbrook. Star and Meadowbrook appealed.

## II

[¶ 7] Ziegler moved to dismiss this appeal, arguing the district court's order granting partial summary judgment is not appealable. Star and Meadowbrook concede there are issues remaining to be decided in this action and the district court's order is interlocutory. They argue, however, this Court should allow direct appeals of insurance coverage decisions because the unique nature of the decision makes it particularly important for immediate appellate review. They argue the expense, time and judicial resources devoted to cases involving insurance claims justify direct appeals of coverage decisions. They claim N.D.C.C. § 32–23–06 evinces a legislative intent for prompt determination of coverage issues.

[¶ 8] Chapter 32–23, N.D.C.C., authorizes a "court of record within its jurisdiction" to issue a declaratory judgment. N.D.C.C. § 32–23–01. Section 32–23–06, N.D.C.C., provides:

"The court may refuse to render or enter a declaratory judgment or decree where such judgment or decree, if rendered or entered, would not terminate the uncertainty or controversy giving rise to the proceeding. *However, the court shall render or enter a declaratory judgment or decree in an action brought by or against an insurance company to determine liability of the insurance company to the insured to defend, or duty to defend, although the insured's liability for the loss may not have been determined.*"

(Emphasis added.)

[¶ 9] In *Blackburn, Nickels & Smith, Inc. v. National Farmers Union Prop. & Cas. Co.*, 452 N.W.2d 319, 321–23 (N.D. 1990), this Court considered the effect of the 1983 enactment of the underscored language on declaratory judgments involving an insurer's duty to defend. We said the 1983 enactment reversed this Court's decisions in *United Pac. Ins. Co. v. Aetna Ins. Co.*, 311 N.W.2d 170 (N.D.1981), and *Aberle v. Karn*, 316 N.W.2d 779 (N.D. 1982), which held that neither coverage, nor duty to defend could be judicially resolved until the insured's liability had been determined. *Blackburn, Nickels*, at 323. We construed the 1983 enactment to require a district court "to render a declaratory judgment to determine both coverage and duty to defend, whether or not the insured's liability has been determined." *Id.* (footnote omitted).

[¶ 10] Under N.D.C.C. ch. 32–23, the provisions of N.D.C.C. § 32–23–06 apply to courts acting within their jurisdiction, but nothing in the language of that statute nor the legislative history for the 1983 amendment to that statute makes that provision applicable to appeals. Rather, N.D.C.C. § 32–23–07 explicitly provides that "[a]ll orders, judgments, and

decrees under [N.D.C.C. ch. 32–23] may be reviewed as other orders, judgments, and decrees." We have said that "[o]n appeal, declaratory judgment actions are reviewed under the same standards as other cases." *Ramsey County Farm Bureau v. Ramsey County*, 2008 ND 175, ¶ 5, 755 N.W.2d 920. We reject the appellants' argument that this Court should allow immediate appeals of interlocutory decisions about insurance coverage under N.D.C.C. ch. 32–23 because the plain language of N.D.C.C. § 32–23–07 requires "review[ ] as other orders, judgments, and decrees." Words in a statute are given their plain, ordinary and commonly understood meaning. N.D.C.C. § 1–02–02. Statutes are construed as a whole and are harmonized to give meaning to related provisions. *See* N.D.C.C. § 1–02–07. We construe the related provisions of N.D.C.C. ch. 32–23 together according to their plain, ordinary and commonly understood meaning, and we hold that appeals in declaratory judgment actions are governed by jurisprudence for appeals of other orders, judgments and decrees.

[¶ 11] "The right of appeal is governed solely by statute in this state." *Mann v. North Dakota Tax Comm'r*, 2005 ND 36, ¶ 7, 692 N.W.2d 490. We follow "a well-established, two-prong inquiry . . . when analyzing the jurisdiction of this court to consider appeals from orders in cases where there are unadjudicated claims remaining to be resolved by the trial court." *Central Power Elec. Coop., Inc. v. C–K, Inc.*, 512 N.W.2d 711, 714 (N.D.1994). In *Mann*, we explained:

"First, the order appealed from must meet one of the statutory criteria of appealability set forth in NDCC § 28–27–02. If it does not, our inquiry need go no further and the appeal must be dismissed. If it does, then Rule 54(b),

NDRCivP, must be complied with. If it is not, we are without jurisdiction." *Mann*, at ¶ 7 (quoting *Dietz v. Kautzman*, 2004 ND 164, ¶ 6, 686 N.W.2d 110).

[¶ 12] The appellants have not cited any provisions of N.D.C.C. § 28–27–02, which they claim authorizes their appeal. Section 28–27–02, N.D.C.C., provides:

"The following orders when made by the court may be carried to the supreme court:

1. An order affecting a substantial right made in any action, when such order in effect determines the action and prevents a judgment from which an appeal might be taken;

2. A final order affecting a substantial right made in special proceedings or upon a summary application in an action after judgment;

3. An order which grants, refuses, continues, or modifies a provisional remedy, or grants, refuses, modifies, or dissolves an injunction or refuses to modify or dissolve an injunction, whether such injunction was issued in an action or special proceeding or pursuant to the provisions of section 35–22–04, or which sets aside or dismisses a writ of attachment for irregularity;

4. An order which grants or refuses a new trial or which sustains a demurrer;

5. An order which involves the merits of an action or some part thereof;

6. An order for judgment on application therefor on account of the frivolousness of a demurrer, answer, or reply; or

7. An order made by the district court or judge thereof without notice is not appealable, but an order made by the district court after a hearing is had upon notice which vacates or

refuses to set aside an order previously made without notice may be appealed to the supreme court when by the provisions of this chapter an appeal might have been taken from such order so made without notice, had the same been made upon notice."

[¶ 13] In *Sime v. Tvenge Assocs. Architects & Planners, P.C.*, 488 N.W.2d 606, 608 n. 1 (N.D.1992), we said that to avoid a longstanding policy against piecemeal appeals, we would not entertain appeals under N.D.C.C. § 28–27–02 from orders that were not meant to be final. *See Central Power Elec. Coop.*, 512 N.W.2d at 714 (recognizing some orders granting partial summary judgment may involve merits of action or some part thereof and may have element of finality).

[¶ 14] The district court's decision in this case contemplates further discovery and a determination on Meadowbrook's status as a real party in interest. Moreover, the court's decision did not resolve Ziegler's other claims against Star and Meadowbrook, including the duty to defend in the Montana bankruptcy proceeding, the alleged breach of an implied covenant of good faith and fair dealing, and the claim for anticipatory breach or repudiation of the insurance contract. We conclude the order granting partial summary judgment was not intended to be a final order or final determination on the merits and is not appealable under N.D.C.C. § 28–27–02. Because we conclude this order was not intended to be final and is not appealable under N.D.C.C. § 28–27–02, we need not consider issues about certification under N.D.R.Civ.P. 54(b).

### III

[¶ 15] Star and Meadowbrook also assert this Court should exercise its supervisory authority because dismissing the appeal results in an injustice for which there is no adequate remedy.

[¶ 16] In *Forum Commc'ns Co. v. Paulson*, 752 N.W.2d 177 (N.D. 2008), we described the standards for this Court's discretionary exercise of our original jurisdiction to issue supervisory writs in extraordinary cases in which no adequate alternative remedy exists:

"Our authority to issue supervisory writs derives from N.D. Const. art. VI, § 2, and N.D.C.C. § 27–02–04. *Dimond v. State Bd. of Higher Educ.*, 1999 ND 228, ¶ 19, 603 N.W.2d 66. The authority to issue supervisory writs is discretionary; it cannot be invoked as a matter of right. *Trinity Med. Ctr. v. Holum*, 544 N.W.2d 148, 151 (N.D.1996); *Odden v. O'Keefe*, 450 N.W.2d 707, 708 (N.D. 1990). This Court determines whether it should exercise its original jurisdiction to issue remedial writs on a case-by-case basis. *Heartview Found. v. Glaser*, 361 N.W.2d 232, 234 (N.D.1985); *Marmon v. Hodny*, 287 N.W.2d 470, 474 (N.D.1980). Courts generally will not exercise supervisory jurisdiction 'where the proper remedy is an appeal merely because the appeal may involve an increase of expenses or an inconvenient delay.' *Fibelstad v. Glaser*, 497 N.W.2d 425, 429 (N.D.1993). We exercise our authority to issue supervisory writs rarely and cautiously, and only to rectify errors and prevent injustice in extraordinary cases in which there is no adequate alternative remedy. *State ex rel. [Heitkamp] v. Hagerty*, 1998 ND 122, ¶ 6, 580 N.W.2d 139."

*Paulson*, 2008 ND 140, ¶ 8, 752 N.W.2d 177 (quoting *Roe v. Rothe–Seeger*, 2000 ND 63, ¶ 5, 608 N.W.2d 289).

[¶ 17] Here, there are issues remaining to be resolved in this declaratory judgment action, and there is an adequate remedy by

appeal when the remaining issues are resolved. We are not persuaded this case presents any unique circumstances justifying the exercise of our supervisory jurisdiction, and we conclude this is not an appropriate case to exercise our supervisory jurisdiction.

## IV

[¶ 18] We hold the order granting partial summary judgment is not appealable, and we dismiss the appeal.

[¶ 19] DANIEL J. CROTHERS and MARY MUEHLEN MARING, JJ., concur.

KAPSNER, Justice, concurring in the result.

[¶ 20] I concur in the result reached by the majority but would employ a different analysis to reach that result. I am persuaded the method of analysis used by the Supreme Court of Ohio, in a similar case and under a similar appellate framework, should guide our decision here.

[¶ 21] Chapter 32–23, N.D.C.C., authorizes a court to enter a declaratory judgment. A declaratory judgment is a remedy that was unknown to the common law. *Gen. Accident Ins. Co. v. Ins. Co. of N. America*, 44 Ohio St.3d 17, 540 N.E.2d 266, 271 (1989). The declaratory judgment action is a special proceeding as that term is used in N.D.C.C. § 28–27–02(2). *Kee v. Redlin*, 203 N.W.2d 423, 429 (N.D.1972) ("[U]nder the terms of our statutes an ordinary proceeding is one known to the common law, ... while a special proceeding is a remedy of statutory origin."). In *General Accident*, at 272, the Ohio court recognized a declaratory judgment action as a special proceeding for purposes of appeal under Ohio Rev.Code 2505.02. The statute includes the following as final orders that are appealable: "[a]n order that affects a substantial right in an action that

in effect determines the action and prevents a judgment" and "[a]n order that affects a substantial right made in a special proceeding or upon a summary application in an action under judgment." Ohio Rev.Code 2505.02. Similarly, N.D.C.C. § 28–27–02(2) provides for an appeal from "[a] final order affecting a substantial right made in special proceedings...."

[¶ 22] Treating the declaratory judgment action as a special proceeding from which an appeal can be taken, the court must analyze whether there is a final order affecting a substantial right. The language of N.D.C.C. § 32–23–06 demonstrates that decisions on the duty to defend are decisions which affect a substantial right.

> The court may refuse to render or enter a declaratory judgment or decree where such judgment or decree, if rendered or entered, would not terminate the uncertainty or controversy giving rise to the proceeding. *However, the court shall render or enter a declaratory judgment or decree in an action brought by or against an insurance company to determine liability of the insurance company to the insured to defend, or duty to defend, although the insured's liability for the loss may not have been determined.*

N.D.C.C. § 32–23–06. (Emphasis added).

[¶ 23] The Ohio courts have recognized the substantive nature of the rights and obligations under an insurance contract relating to the duty to defend:

> The duty to defend is of great importance to both the insured and the insurer. If an insurer mistakenly refuses to defend its insured, the adverse consequences can be great. "When an indemnitor wrongfully refuses to defend an action against an indemnitee, the indemnitor is liable for the costs, including

attorney fees and expenses, incurred by the indemnitee in defending the initial action and in vindicating its right to indemnity in a third-party action brought against the indemnitor." *Allen v. Standard Oil Co.* (1982), 2 Ohio St.3d 122, 2 OBR 671, 443 N.E.2d 497, paragraph two of the syllabus. On the other hand, if the insurer is required to defend an insured, " * * * [the insurer] may try an expensive negligence case which a court may later hold is not within the terms of the policy. * * * " Amer, The Declaratory Judgments Act of Ohio (1942), 14 Cleve. B. Assn. J. 19, 32.

The duty to defend is equally important to the insured. If the insurance company refuses to defend, then the insured often must choose to settle the suit as quickly as possible in order to avoid costly litigation, bring a declaratory judgment action against the insurer seeking a declaration that there is a duty to defend, or defend the suit without help from the insurer.

Thus, the duty to defend involves a substantial right to both the insured and the insurer.

*Gen. Accident Ins. Co.*, 540 N.E.2d at 271.

[¶ 24] Although the decision of a trial court to render a decision in a declaratory judgment action is discretionary under N.D.C.C. §§ 32–23–01 and 32–23–06, the language inserted by the legislative assembly in N.D.C.C. § 32–23–06 in 1983, which is underlined in the above quote, indicated that decisions on the duty to defend were required. In this respect, I am convinced that this Court's decision in *Blackburn, Nickels & Smith, Inc. v. Nat'l Farmers Union Prop. & Cas. Co.*, 452 N.W.2d 319 (N.D.1990), cited and relied upon by the majority, is directly contradicted by a plain reading of the language of N.D.C.C. § 32–23–06. The statute requires a decision on the duty to defend, but leaves to the dis-

cretion of the trial court whether to decide other issues, including the duty to indemnify. Despite the plain language of the statute, this Court in *Blackburn* construed the 1983 language to require a court "to render a declaratory judgment to determine both coverage and duty to defend, whether or not the insured's liability has been determined." *Blackburn*, at 323. Rather than providing a decision on the duty to defend, which would allow the underlying case to go forward, the interpretation in *Blackburn* leaves trial courts in a quandary, demonstrated by the facts in this case.

[¶ 25] The duty to defend is distinct from and broader than the duty to indemnity.

The insurer's duty to defend and duty to indemnify are two different issues. *Smith v. American Family Mut. Ins. Co.*, 294 N.W.2d 751, 759 (N.D.1980). "Ordinarily, an insurer has a duty to defend an underlying action against its insured if the allegations in the complaint give rise to potential liability or a possibility of coverage under the insurance policy." [*Nodak Mut. Ins. Co. v.*] *Heim*, 1997 ND 36, ¶ 11, 559 N.W.2d 846.

*Hanneman v. Cont'l W. Ins. Co.*, 1998 ND 46, ¶ 39, 575 N.W.2d 445. Often the duty to indemnify cannot be determined until the facts of the underlying litigation have been developed. If both the duty to defend and the duty to indemnify must be decided in the declaratory action, neither it nor the underlying action can proceed in an orderly fashion.

[¶ 26] The 1983 amendments make clear that the duty to defend enjoys special status. That emphasis supports the arguments of the appellants that there should be an expeditious decision, including appellate review, of decisions on the duty to defend. I would hold that a decision on

the duty to defend under N.D.C.C. § 32–23–06 involves a final order affecting a substantial right for purposes of appealability under N.D.C.C. § 28–27–02(2). Such a result would further the specific intent expressed in N.D.C.C. § 32–23–12: "This chapter is remedial. Its purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations, and it is to be construed and administered liberally."

[¶ 27] This case amply identifies the problems created when *Blackburn* instructed trial courts to make decisions on both the duty to defend and coverage issues at an early state when the factual allegations of the complaint have not been subject to evidentiary findings. The duty to defend is broader than the duty to indemnify. *Farmers Union Mut. Ins. Co. v. Decker*, 2005 ND 173, ¶ 13, 704 N.W.2d 857. The duty to defend arises "if any part of the cause of action against the insured arguably falls within the scope of the coverage...." *John Deere Ins. Co. v. Shamrock Indus., Inc.*, 929 F.2d 413, 417 (8th Cir.1991) (quoting *Senger v. Minnesota Lawyers Mut. Ins. Co.*, 415 N.W.2d 364, 369 (Minn.App.1987)). *See also Decker*, at ¶ 13; *Hanneman*, at ¶ 39; *Heim*, 1997 ND 36, ¶ 11, 559 N.W.2d 846. However, coverage issues often cannot be decided until issues of fact in the underlying litigation are fully developed, if not completed. *John Deere*, at 416. There is simply insufficient information in this record to determine whether the trial court's decision on coverage is correct. Indeed, the trial court's order regarding coverage reflects this very problem.

Plaintiff asks this Court to look beyond the face of the complaint, similar to what the district court did in *Ohio Casualty Ins. Co. [v]. Clark*, 1998 ND [153,] 583 N.W.2d 377, and look to the underlying "sham transaction." Again, it should be noted that there appear to be no North Dakota cases that explain how far beyond the complaint a court can look to determine whether or not an insurer should provide coverage. The North Dakota Supreme Court in *Clark* said the district court did not err in looking beyond the complaint to the underlying facts of the act. In *Farmers Union Mutual Ins. Co. [v]. Decker*, 2005 ND [173,] 704 N.W.2d 857, the Court said the allegations of the complaint should be reasonably interpreted in determining whether the claims are within the coverage and any doubt or ambiguity resolved in the insured's favor. So it appears that looking at the underlying transaction that is allegedly a "sham" would be reasonable, considering that "sham transaction" is a broad descriptive statement.

Under the facts of this case it would be reasonable to conclude that Dakota West loaned the funds to H & J Livestock under the assumption that H & J was purchasing cattle from Ziegler on consignment. Although it was concluded later by Dakota West that the transaction was a "sham" it was the belief of Dakota West initially that there was a valid consignment sale from a sales ring to H & J. Although Ziegler may have been negligent in the way he conducted his business with Horob the transaction between Horob Livestock, Ziegler and H & J Livestock would best be described as a consignment sale albeit it was a "sham." Absence proof of a conspiracy between Horob and Ziegler Star Insurance is obligated to defend and indemnify Ziegler.

To reach a decision at this point, the trial court was forced to make assumptions, based on allegations, to decide whether coverage existed because evidentiary findings had not yet been made. This is the

analysis required for the duty to defend, but should not be the basis for decisions on coverage.

[¶ 28] However, holding that an order determining the duty to defend is an order affecting a substantial right for purposes of appeal does not end the inquiry. This action involves more than the duty to defend. Other issues are pending between these parties. Section 32–23–07, N.D.C.C., provides that "orders, judgments, and decrees under this chapter may be reviewed as other orders, judgments, and decrees." Thus, where other claims exist and the trial court has not declined to render a decision declaring the rights of the parties in those other matters, but has left them pending, N.D.R.Civ.P. 54(b) requires an analysis of whether there is no just cause to delay the entry of an order from which an appeal can be taken.

[¶ 29] The *John Deere* decision, *supra*, is instructive. Applying Minnesota law and the federal rules of procedure, the Eighth Circuit Court of Appeals reviewed a trial court decision granting summary judgment determining an insurer had a duty to defend, denying summary judgment on the duty to indemnify, and applying F.R.Civ.P. 54(b) to hold there was no just cause to delay appeal of the order on the duty to defend. Such procedure gives full effect to the importance the Legislature has placed on getting a decision on the duty to defend, prevents the attempt to review a trial court's decisions of coverage where there is an insufficient record to do so, and permits the parties and the trial court to address the issues in an orderly fashion, perhaps delaying the issue of coverage in the declaratory judgment action until the conclusion of the underlying action.

[¶ 30] In this case, although there is an order requiring the insurer to defend, which should be treated as an order affecting a substantial right in a special proceeding and thus appealable if a proper N.D.R.Civ.P. 54(b) certification was entered, no such certification was entered. Although appellants moved for a 54(b) certification, the motion was brought after filing this appeal, and the trial court held it had no jurisdiction to enter further orders. Moreover, the underlying claims and posture of the declaratory judgment action would have made the entry of an order under N.D.R.Civ.P. 54(b) improvident in any event. I would dismiss the appeal.

[¶ 31] Carol Ronning Kapsner

VANDE WALLE, Chief Justice, dissenting.

[¶ 32] I respectfully dissent.

[¶ 33] Section 32–23–06, N.D.C.C., clearly requires the court to "enter a declaratory judgment or decree in an action brought by or against an insurance company to determine liability of the insurance company to the insured to defend, or duty to defend, although the insured's liability for the loss may not have been determined." The reason for and the legislative history of the provision is discussed in *Blackburn, Nickels & Smith, Inc. v. Nat'l Farmers Union Prop. & Cas. Co.*, 452 N.W.2d 319 (N.D.1990). The majority opinion concludes the order granting partial summary judgment was not intended to be a final order or final determination on the merits and is not appealable under N.D.C.C. § 28–27–02. But, N.D.C.C. § 32–23–01 provides:

No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for. The declaration may be either affirmative or negative in form and effect, *and such declaration shall have the force and effect of a final judgment or decree.* (emphasis supplied)

[¶ 34] The finality pronouncement in N.D.C.C. § 32–23–01, when read with the directive in N.D.C.C. § 32–23–06, are alone sufficient and, I believe, intended to make the declaratory judgment immediately appealable. If further authority for the declaratory judgment is necessary to make the judgment appealable under N.D.C.C. § 28–27–02, I agree with Justice Kapsner's special concurrence to the extent it concludes that the declaratory judgment is appealable under subsection 2 of that statute, providing that a "final order affecting a substantial right made in special proceedings" is appealable. I cannot conclude the action taken by the Legislature in 1983 to specifically require a court to issue a declaratory judgment to determine the liability of an insurance company to the insured to defend, or duty to defend, was merely intended to require a district court to decide the issue only to have the parties face the possibility it could be overturned after a full trial and appeal to this Court. I therefore disagree with the analysis of this issue employed in the majority opinion.

[¶ 35] The trial court, as well as the majority opinion and the special concurrence, appear to assume that a declaratory judgment is a summary judgment. Although a summary judgment might be appropriately issued in a declaratory judgment action if there are no undisputed facts, summary judgments and declaratory judgments are not synonymous. Chapter 32–23, N.D.C.C., the Declaratory Judgments Act, does not prohibit the district court from taking evidence before issuing the declaratory judgment. To the contrary, N.D.C.C. § 32–23–09 specifically recognizes that when "a proceeding ... involves the determination of an issue of fact, such issue may be tried and determined in the same manner as issues of fact are tried and determined in other civil actions in the court in which the proceeding is pending." Indeed, it may be necessary to take evidence in order to resolve the issue raised under the declaratory judgment procedure. It is possible that such evidence might be some of the same evidence that would be adduced in the underlying action. Therefore, I disagree with the special concurrence that "the trial court was forced to make assumptions, based on allegations, to decide whether coverage existed because evidentiary findings had not yet been made." Evidentiary findings could have been made before the declaratory judgment was issued.

[¶ 36] If there are issues of fact which remain to be decided before declaratory judgment on the duty to defend and the duty to indemnify can be determined, we ordinarily would reverse the summary judgment and remand for further proceedings. I therefore would not dismiss the appeal. Rather, I would hear the appeal on its merits. If we cannot decide the appeal because there are issues of fact which remain, I would reverse the order for partial summary judgment and remand it to the district court to take sufficient evidence to decide any factual issues necessary to determine whether or not Meadowbrook Insurance Group, Inc., and Star Insurance Company have a duty to defend and a duty to indemnify James Ziegler in the action brought against him by Dakota West Credit Union.

[¶ 37] GERALD W. VANDE WALLE, C.J., and DALE V. SANDSTROM, JJ., concur.